| | AUSA: | Jihan Williams | Telephone: | (313) 226-9520 |
| AO 91 (Rev. 11/11)  Criminal Complaint | Special Agent: | Michael DeVantier | Telephone: | (313) 573-2911 |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

\16

United States of America

    v.

D1-Bradford Jones

D2- Christine Rourke

D3- Derrick Solomon

D4- Kari De-Marco Kimpson

D-5- Richard Miller

Case: 2:18-mj-30121
Assigned To : Unassigned
Assign. Date : 2/26/2018
Description: RE: JONES, ROURKE,
SOLOMON, KIMPSON, MILLER
(EOB)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___October 20, 26 and November 2, 2017___ in the county of _____Wayne_____ in the
___Eastern___ District of ___Michigan___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 United Stated Code 924(c) | Possession of a Firearm in Furtherance of Federal Drug/Violent Crime |
| 21 United States Code 841(a)(1) | Narcotics-Manufacture or Possession with Intent to Distribute |
| 21 United States Code 846 | Conspiracy to Deliver Illegal Narcotics |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Michael DeVantier, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

_____
*Judge's signature*

Date: _2/26/2018_____

City and state: _Detroit, Michigan_____

Hon. David R. Grand    United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## A CRIMINAL COMPLAINT

### INTRODUCTION

I, Special Agent Michael DeVantier, being first duly sworn, hereby depose and state as follows:

1.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, informants, and witnesses. This affidavit only proves the existence of probable cause for the requested warrants and does not set forth all the information related to this investigation.

2.      Your Affiant has been employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) for nine (9) years. Affiant is currently assigned to the Detroit, Michigan Field Division, Group 1, where Affiant is tasked with investigating violations of firearms and narcotics laws.  Affiant has been involved in numerous investigations involving violations of federal firearms and narcotics laws, which have resulted in the arrest of numerous criminal defendants and the seizure of numerous firearms.  In addition, Affiant was employed as a United States Customs and Border Protection Officer for approximately eight (8) years where Affiant was involved in the recovery and seizure of hundreds of pounds of illegal narcotics and large amounts of currency from individuals and vehicles.

## SUMMARY OF THE INVESTIGATION

3.     Affiant is currently conducting an investigation into the violation of federal narcotics laws by Bradford JONES (S-1) (B/M, DOB-**/**/1955), Christine ROURKE (S-2) (W/F, DOB-**/**/1988), Derrick SOLOMON (S-3) (B/M, DOB-**/**/1960), Kari De-Marco KIMPSON Sr. (S-4) (B/M, DOB-**/**/1971), and Richard MILLER (S-5) (B/M, DOB-**/**/1971).

### Transaction One

4.     October 20, 2017, S/A Yott, along with other ATF Agents, were involved in the surveillance of an undercover purchase of suspected heroin from Bradford JONES, (S-1), Christine ROURKE, (S-2), Derrick SOLOMON, (S-3), and an individual identified as Kari KIMPSON, (S-4).

5.     Prior to the below illegal narcotics transaction, S/A Yott established fixed surveillance in the area of Sheridan and E. Jefferson, Detroit, Michigan. S/A Yott observed Bradford Jones, along with a white female Christine Rourke, standing in the area of E. Jefferson east of Sheridan. After a period, Jones and Rourke walked to the corner of Field and E. Jefferson.

6.     While the surveillance was ongoing, S/A Salazar placed a cellular phone call to Bradford Jones utilizing cellular phone number 313-XXX-8729 and spoke to him. During this conversation, S/A Salazar ordered a quantity of heroin from Jones and Jones stated he would call back. S/A Salazar received a call back

from Jones who stated, "Come on through."

7. Jones directed S/A Salazar to the corner of Sheridan and E. Jefferson. S/A Yott maintained surveillance.

8. S/A Salazar arrived in the area of Jefferson and Sheridan, Detroit, Michigan. S/A Salazar met with Jones at the passenger window of the undercover vehicle, and Jones advised that his supplier would be arriving shortly. While waiting for the supplier, Christine Rourke approached the passenger window of the undercover vehicle and spoke with S/A Salazar. Rourke told S/A Salazar that Jones was still waiting and it would be another 10 minutes and she waited with S/A Salazar.

9. While S/A Salazar was waiting, S/A Yott observed Jones return to Field and E. Jefferson. S/A Yott observed Jones meet with an unknown black male, wearing a striped shirt, believed to be Derrick Solomon, and saw Jones accept a knotted plastic bag, which he opened as he walked toward the undercover vehicle.

10. S/A Salazar met with Jones at the passenger window of the undercover vehicle, and purchased one (1) knotted plastic bag containing suspected heroin from Jones in exchange for $1,000.00 in prerecorded government funds.

11. Jones and Rourke left the area, and S/A Salazar left the location and

this concluded the undercover purchase.

12.  S/A Yott received information that the undercover transaction had been completed and S/A Yott saw Jones, Solomon and Rourke have a short conversation and then separate.

13.  Constant surveillance was maintained on Solomon, who ran north on E. Grand Boulevard toward a red, 2007 Pontiac Grand Prix, license plate number DXXX110, which S/A Yott saw was being driven by Kari Kimpson. Solomon entered the passenger side of the vehicle. Surveillance was maintained on the red Pontiac, which travelled directly to XX51 Prince Hall Dr., Detroit and parked in the parking lot at that location. S/A Yott then observed Kimpson enter the common door of XX51 Prince Hall Drive, Detroit, Michigan. This concluded the surveillance.

14.  Upon returning to the ATF office, S/A Salazar placed the purchased suspected heroin into ATF Evidence. The suspected heroin was not field tested per ATF policy, however, based on the fact S/A Salazar was purchasing an item reported to be heroin from S-1, based on the item's appearance, and based on my training and experience, the substance purchased is believed to be heroin.

### Second Transaction

15.  October 26, 2017, Affiant, along with other ATF Agents, were involved in the surveillance of an undercover purchase of suspected heroin from

Bradford JONES, (S-1), Christine ROURKE, (S-2), Derrick SOLOMON, (S-3), and Kari KIMPSON, (S-4).

16. Prior to the below illegal transaction, surveillance was established in the area of Sheridan and E. Jefferson, Detroit, Michigan.

17. Once surveillance was established, S/A Salazar placed a cellular phone call to S-1 utilizing cellular phone number 313-XXX-8729 and spoke to Jones. During this conversation, S/A Salazar ordered five (5) grams of heroin from Jones.

18. S/A Salazar arrived in the area of Jefferson and Sheridan, Detroit, Michigan and met with Jones and Rourke at the passenger window of the undercover vehicle. Jones told S/A Salazar he was waiting for his guy to bring it and it would just be about 10 more minutes. S/A Salazar agreed to wait and at approximately 11:40 a.m., S/A Salazar received a cellular phone call from Rourke utilizing cellular phone number 313-XXX-8729 who stated they are meeting with the supplier now.

19. Affiant observed a red, Chevy, Impala, Michigan license plate XXX3G1, operated by Kari Kimpson arrive in the area, and Derrick Solomon exited the vehicle. Kari Kimpson departed the area. Solomon met with Jones, gave Jones an item, and they separated. Jones started walking east towards the undercover vehicle.

20.    S/A Salazar met with Jones at the passenger window of the undercover vehicle and at this time S/A Salazar purchased one (1) knotted plastic bag containing approximately 6.99gg of suspected heroin from Jones in exchange for $500.00 in prerecorded government funds. S/A Salazar left the area and this concluded the undercover purchase.

21.    Solomon waited with Rourke in the area of Field and Congress. Affiant received information that the undercover transaction had been completed and Jones returned to Solomon and handed him an item. Jones, Rourke, and Solomon met briefly, and Solomon walked west on Congress towards E. Grand Boulevard.

22.    Constant surveillance was maintained on Solomon who walked north of E. Lafayette, on E. Grand Boulevard,  and met with a Red, 2007, Pontiac, License number XXX5110, being driven by Kari Kimpson, and entered the passenger side of the vehicle. ATF Agents maintained surveillance on the Red Pontiac.  After a brief time, surveillance was terminated and this concluded the surveillance.

23.    Upon return to the ATF office, S/A Salazar placed the items, along with the recording of the purchase, into ATF Evidence. The suspected heroin was not field tested per ATF policy, however based on the fact S/A Salazar was purchasing heroin from S-1 and S/A Salazar's training and experience, the

substance purchased is believed to be heroin.

### **Third Transaction**

24.     On November 2, 2017, Affiant, along with other ATF Agents, were involved in the surveillance of an undercover purchase of suspected heroin from Bradford JONES, (S-1), Christine ROURKE, (S-2), Derrick SOLOMON, (S-3), and Richard MILLER, (S-6).

25.     Prior to the below illegal transaction, surveillance was established in the area of Sheridan/Field and E. Jefferson, Detroit, Michigan. S/A Yott observed Bradford Jones, along with Christine Rourke in the area. S/A Salazar spoke with Jones who directed him to Sheridan and E. Jefferson for a narcotic transaction.

26.     Once surveillance was established, S/A Salazar placed a cellular phone call to Jones utilizing cellular phone number 313-XXX-8729 and spoke to Jones. During this conversation, S/A Salazar ordered five (5) grams of heroin from Jones and Jones said he would call back. S/A Salazar received a call back from Jones who stated, "Come on."

27.     S/A Yott observed Jones, along with Rourke, standing on E. Jefferson east of Sheridan, and they approached the undercover vehicle.

28.     Affiant received information from S/A Yott, a Dark Blue, 2008, Chevrolet Suburban, Michigan license plate number XXX138 arrived at the corner of Field and E. Jefferson, and Jones meet with the passenger at the

passenger door. Within seconds, Jones was observed walking away from the vehicle towards the undercover vehicle, holding a small plastic bag in his right hand.

29.     Jones returned to the undercover vehicle and met with S/A Salazar at the passenger window and at this time S/A Salazar purchased one (1) knotted plastic bag containing approximately 5.92gg of suspected heroin from Jones in exchange for $500.00 in prerecorded government funds. Jones then handed S/A Salazar his cellular phone to speak to his supplier. During this conversation the supplier told S/A Salazar he needed the money up front so Jones wasn't running back and forth. The supplier also stated he would give S/A Salazar a little extra next time. S/A Salazar returned the cell phone to Jones and left the location and this concluded the undercover purchase.

30.     After Jones had short meeting with S/A Salazar, and Affiant received information from the undercover the illegal transaction was complete. S/A Yott observed Jones return to the Dark Blue Suburban and meet with the passenger again. After a brief meeting, Jones separated from the vehicle and the vehicle departed north on Field St. Affiant and S/A Yott maintained constant surveillance of the Dark Blue Suburban until a traffic stop could be conducted at the corner of Kerchevel and E. Grand Boulevard by TFO Bunch and TFO Simgielski.

31.     TFO Bunch and TFO Simgielski conducted a traffic stop of the Dark

Blue Suburban, which was driven by Richard Miller and with Derrick Solomon as the passenger.

32.     During the traffic stop, TFO Bunch and Simgielski recovered a firearm from the driver Richard Miller. In addition, and the Officers smelled a strong odor of marijuana. Based on this information, Your Affiant and S/A Yott, arrived on the scene of the traffic stop to interview Richard Miller, and the passenger, Derrick Solomon.

33.     Prior to the interview of Richard Miller, S/A Yott advised Richard Miller of his Miranda Rights and questioned him relating to the items observed inside the vehicle. Richard Miller indicated the firearm belonged to him, has a permit to carry the firearm, has a Medical Marijuana Card, was smoking marijuana just prior to the traffic stop, has been smoking marijuana since he was 18 years old, has his personal quantity of marijuana in a bag in the back seat, and the money found in the driver's side sun visor belong to him ($500.00 in $100 bills).

34.     Based on this information, S/A Yott photographed the U.S. Currency in the possession of Richard Miller and instructed TFO Simgielski to seize the firearm, marijuana and documents relating to the possession of the firearms and Medical Marijuana Card.  TFO Simgielski seized the following items from Richard Miller:

a. One (1) Smith & Wesson, MODEL SD40VE, CAL: 40, SN: PBU0765 handgun.

b. Fourteen (14), live rounds of .40 caliber ammunition.

c. Approximately .24 grams, marijuana cigarette.

d. Approximately 55.3 gg of marijuana.

e. One (1) digital scale and narcotics paraphernalia.

f. One (1) medical marijuana card and one (1) CCW permit in the name of S-6.

35.    At this juncture, S/A Yott interviewed passenger, Derrick Solomon, who gave agents a false name. After a series of questions relating to his identity, agents identified Solomon.

36.    At the conclusion of the investigative activity, both Richard Miller and Derrick Solomon were released pending further investigation.

37.    Upon return to the ATF office, S/A Salazar placed the suspected heroin, into ATF Evidence. The suspected heroin was not field tested per ATF policy, however based on the fact S/A Salazar was purchasing heroin from Jones and S/A Salazar's training and experience, the substance purchased is believed to be heroin.

### Search Warrant Operation

38.     On October 26, 2017, Affiant obtained a Federal Search Warrant #2:17-mc-51465-1, #2:17-mc-51465-2, and #2:17-mc-51465-3 for the residence located at 22XX Prince Hall, Apt. 2B, Detroit, Michigan, a red, Chevy, Impala, Michigan license plate XXX3G1, and a red, Pontiac, Grand Prix, Michigan license plate XXX-5110. These warrants were reviewed and signed by U.S. Magistrate Judge Mona K. Majzoub.

39.     On November 2, S/A Yott observed the above Chevy, Impala in the area of Kerchevel and Mt. Elliott, being driven by Kari Kimpson. Task Force Officers Simgielski and Bunch conducted a traffic stop of the vehicle in order to execute the search warrant. The vehicle, along with Kari Kimpson were transported to the staging area for security purposes, where S/A Yott advised Kari Kimpson of his Miranda Rights, and questioned Kari Kimpson relating to the presence of weapons, valuables and narcotics. Kari Kimpson stated there were two (2) firearms at his residence located at XX51 Prince Hall, Apt. 2B, and denied the presence of any illegal narcotics or valuables.  Kari Kimpson provided the keys for the above residence and agreed to accompany the Agents to the residence for the search warrant at that location.

40.     At approximately 12:30 p.m., ATF Agents arrived at XX51 Prince Hall, and utilized the key provided by Kari Kimpson, to gain access to the main

entrance. ATF Agents met with a female, identified as Candice Kimpson at the main door. Candice Kimpson directed Agents to apartment 2B and opened the door. Upon entry, a female later identified as Taylor Iman Daramy (**/**/**95) and a small child later identified as Zylar Jae Hizzins (**/**/*17), were located on the couch in the living room.

41.     Once the location was secure, Kari Kimpson directed Affiant and S/A Yott to the location of the gun in the bedroom closet, and requested the assistance from Candice Kimpson for the location of the pistol and narcotics, which she previously hid at Kari Kimpson's direction. Candice Kimpson directed S/A Yott under the cushion of the couch in the living room for the narcotics and under a set of shelves in the bedroom for the pistol. A search of the residence was conducted and the following items were seized:

> A.     One (1) loaded, Taurus, model PT145PRO, .45 caliber, serial
>         number NER10599, handgun, found in the east bedroom,
>         under the shelves of an entertainment center,
>
> B.     One (1) Smith and Wesson, model M&P10, serial number
>         KN11521, rifle, found in the east bedroom closet, inside a rifle
>         case,
>
> C.     Four (4) live rounds of .308 caliber ammunition, located in the
>         east bedroom closet, found loaded in a magazine inside the

rifle case,

D.     One (1) live round of .45 caliber ammunition, found under the

       mattress in the east bedroom,

E.     Approximately 15.20gg of suspected crack cocaine base in a

       plastic baggie, located in the living room inside the storage

       area of the couch,

F.     Approximately 17.5gg of suspected heroin in a plastic baggie,

       located in the east bedroom in the shelving of the entertainment

       center,

G.     Narcotics packaging material, paraphernalia, and digital scale

       found within the residence.

42.     Once the search was complete, S/A Yott again questioned Kari

Kimpson about the items recovered and the possibility of the presence of heroin.

Kari Kimpson stated he sold all the heroin he had, the "Crack" cocaine recovered

was less than an ounce, and the firearms were for protection.

43.     In addition, S/A Yott, in the presence of TFO Bunch, S/A McLean

and S/A Sise, advised Candice Kimpson of her Miranda Rights and questioned her

relating to the firearms and narcotics. Candice Kimpson stated she hid the

narcotics and pistol at the request of her husband Kari Kimpson, the guns are not

hers, she has never shot the guns, she has no knowledge of how guns work, she

knows her husband Kari Kimpson sells illegal narcotics, but has no knowledge of how much or how much money he makes.

44.     At the conclusion of the search warrant, Kari Kimpson was released pending further investigation.

## **Conclusion**

45.     Based on the above information, Affiant has probable cause to believe

Bradford JONES (S-1),  Christine ROURKE (S-2), Derrick SOLOMON (S-3),

and Kari KIMPSON (S-4), were involved in a conspiracy to deliver illegal

narcotics to an undercover ATF Agent in violation of Title 21, USC, Section

841(a)(1) and 846; Richard MILLER (S-5), while armed,  was involved in a

conspiracy to deliver illegal narcotics to an undercover ATF Agent in violation of

Title 18, UCS, Section 924(c), Title 21, USC, Section 841(a)(1) and 846; and Kari

KIMPSON (S-4), was found in possession of a quantity of "Crack" cocaine,

heroin and two (2) firearms, said firearms in furtherance of a drug trafficking

crime in violation of Title 18 U.S.C., Sec. 924(c) and 21 U.S.C. Sec. 841 (a)(1).

These violations occurring all within the Eastern Judicial District of Michigan.

Michael DeVantier
ATF Special Agent


Sworn and subscribed before me on this 26 of February 2018

Hon. David R. Grand
U.S. Magistrate Judge